IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| JUDICIAL WATCH, INC., | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 1:12-cv-00049-RC |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE, and | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, defendants U.S. Department of Defense and the Central

Intelligence Agency respectfully move the Court for summary judgment in their favor, as there is

no genuine issue of material fact precluding judgment in their favor.  The reasons for defendants'

motion are set forth in the accompanying Memorandum of Law and attachments thereto.


Respectfully Submitted,

STUART F. DELERY
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Director, Federal Programs Branch


 /s/ Marcia Berman
MARCIA BERMAN
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7132
Washington, D.C.  20530
Tel.: (202) 514-2205
Fax: (202) 616-8470

Email: marcia.berman@usdoj.gov

Attorneys for Defendants.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 1:12-cv-00049-RC |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE, and | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

At issue in this Freedom of Information Act ("FOIA") lawsuit is the Government's withholding of the identities of certain Central Intelligence Agency ("CIA") and Department of Defense ("DoD") officers who were involved in the planning for the raid that resulting in the death of Osama bin Laden.  The CIA and DoD have properly and reasonably withheld these names from disclosure pursuant to well-established FOIA exemptions, and plaintiff Judicial Watch cannot seriously contend otherwise.

Presumably, plaintiff's argument for disclosure will focus on the public domain doctrine and the fact that the CIA and DoD provided these individuals' names to a pair of filmmakers working on a film about the raid, so that the filmmakers could meet with them.  But the CIA and DoD did not waive their right to protect these names from disclosure under the invoked FOIA exemptions because, by merely sharing the names with the filmmakers, for the limited purpose of facilitating the meetings, the agencies did not "disclose[] and preserve[] [them] in a permanent

public record," and did not, therefore, put the information into the public domain.  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).  Neither agency authorized the filmmakers to make the names public or use them in the film, and DoD specifically told them not to reveal the name it provided.  Moreover, the public domain doctrine is not even available for an exemption (b)(6) claim, which is at issue here, because the privacy interests at stake belong to the individual and cannot be waived by the Government.

Plaintiff cannot satisfy the high standard under the public domain doctrine for a waiver of an otherwise-valid FOIA exemption.  The Court should grant summary judgment in defendants' favor.

## BACKGROUND

On August 9, 2011, Judicial Watch sent FOIA requests to defendants United States Department of Defense ("DoD") and Central Intelligence Agency ("CIA"), seeking records of communications between the agencies and certain filmmakers concerning a planned film about the killing of Osama bin Laden.  Judicial Watch specifically requested all records of communications between DoD or the CIA and Kathryn Bigelow, Mark Boal, Megan Ellison, or any other officer or employee of Annapurna Pictures; and all records concerning an upcoming film regarding the killing of bin Laden.  The time frame for the request was January 1, 2011, through August 9, 2011.  Declaration of Martha M. Lutz, Information Review Officer, Director's Area, Central Intelligence Agency ("Lutz decl."), at ¶ 7 & Ex. A, attached hereto as Ex. 1; Declaration of Mark Herrington ("Herrington decl."), at ¶ 3 & Ex. A, attached hereto as Ex. 2. DoD and the CIA both acknowledged receiving Judicial Watch's request but explained that they would not be able to respond to the request within the 20-day statutory time period.  Herrington

decl. at ¶ 4 & Ex. B; Lutz decl. at ¶ 8 & Ex. B.  On January 12, 2012, Judicial Watch filed the instant complaint seeking the release of the requested records.

Pursuant to the parties' agreement, DoD and the CIA produced responsive, non-exempt documents to plaintiff on May 18, 2012.  DoD produced 153 pages of responsive records, including a 16-page transcript of a background interview with Mark Boal and Kathryn Bigelow, with minimal redactions.  Herrington decl. at ¶ 4.  The CIA produced 67 responsive documents, also minimally redacted, and withheld in full 27 responsive documents on the basis of FOIA exemptions (b)(5), primarily on the grounds of the attorney-client privilege.  Lutz decl. at ¶ 9. On August 24, 2012, DoD and the CIA produced additional responsive, non-exempt records to plaintiff, also with minimal redactions.  *See* July 25, 2012 Order (ECF No. 15); Herrington decl. at ¶ 4; Lutz decl. at ¶ 9.

As a result of negotiations between the parties, defendants understand Judicial Watch to be pursuing the following challenges to defendants' withholdings.  Judicial Watch challenges DoD's redactions on two pages of the transcript, withheld under exemptions (b)(3) and (b)(6). *See* transcript at 3, 16 (pages 140 and 153 of DoD's May 18, 2012 release), attached as Ex.C to Herrington decl.  DoD explains in its declaration that the redactions on page 3 of the transcript (page 140 of DoD's release) are, in order, (1) a first and last name of a DoD individual suggested by Mark Boal as someone he wanted to talk to; (2) a rank and last name of a different DoD individual identified by Mark Boal; (3) a last name - full name, such as "Smith, John Smith," of a third DoD individual suggested by the Under Secretary of Defense for Intelligence, Mike Vickers, as someone Mark Boal could talk to; and (4) the last name of this third individual.  The redaction on page 16 of the transcript (page 153 of DoD's release) is the rank and last name of

3

the third individual redacted from page 3 (page 140 of DoD's release) – *i.e.*, the person Mr. Vickers identified for Mark Boal to talk to.  Herrington decl. at ¶ 7.  Thus, the transcript indicates that only one of the names at issue was provided by DoD.  The transcript further says that the individual identified by Mr. Vickers was involved in the mission that resulted in the death of Osama bin Laden "from the beginning as a planner; a SEAL Team 6 Operator and Commander."  Transcript at 3 (page 140 of DoD's release) (Herrington decl. Ex. C).

Judicial Watch also challenges the CIA's withholding of names or identifying information of certain of its officers or employees who played a role in the planning of the operation that resulted in the death of Osama bin Laden, withheld under exemptions (b)(1), (b)(3), and (b)(6).[1]  Lutz decl. at ¶ 12.  More specifically, the CIA withheld from internal email chains (1) the first and last name of an undercover CIA officer who met with the filmmakers, *see* document no. C05807298 (CIA May 18, 2012 release, at pages 53-54), Lutz decl. at ¶ 14; (2) the true first names of four undercover CIA officers who met with the filmmakers, one of whom is the same officer whose full true name was withheld in document no. CO5807298, *see* document no. C05876857 (CIA Aug. 24, 2012 release, Part 3, at page 24), Lutz decl. at ¶ 15; and (3) the pseudonyms of two officers who met with the filmmakers, *see* document no. C05882735 (CIA Aug. 24, 2012 release, Part 1, at page 31), Lutz decl. at ¶ 16.  The CIA further explains that

---

[1]  In its declaration in support of this motion, the CIA asserts exemption (b)(6) for the first time to protect the names of its personnel.  Lutz decl. at ¶ 27.  Because FOIA directs district courts to review agency actions de novo, an agency may raise a particular exemption for the first time in district court.  5 U.S.C. § 552(a)(4)(B); *see, e.g., Young v. CIA*, 972 F.2d 536, 538-39 (4th Cir. 1992) (FOIA's provision of de novo judicial review means that agencies do not litigate FOIA requests and therefore do not waive FOIA exemptions by not raising them during the administrative process); *Frito-Lay v. U.S. Equal Employment Opportunity Commission*, 964 F. Supp. 236, 239 (W.D. Ky. 1997) (agency's failure to raise an exemption at any level of the administrative process does not preclude it from raising the exemption at the district court level).

officers who met with the filmmakers who were undercover or otherwise in sensitive positions were instructed to provide only their true first names to the filmmakers (so not their last names or pseudonyms).  Lutz decl. at ¶¶ 12, 14-16.

## ARGUMENT

The Freedom of Information Act, 5 U.S.C. 552 ("FOIA"), represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'"  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess., 6 (1966)).  Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest."  *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982).  Consequently, FOIA "provides that agency records may be withheld from disclosure under any one of the nine exemptions defined in 5 U.S.C. § 552(b)."  *Id.*  "These exemptions reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential."  *Hale v. DOJ*, 973 F.2d 894, 898 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993) (Mem.).  *See also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003).  While the statutory exemptions are to be narrowly construed, they must also be construed "to have a meaningful reach and application."  *John Doe*, 493 U.S. at 152.

Most FOIA cases are resolved by summary judgment based on agency affidavits or declarations.  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If an agency's affidavit or declaration describes the justifications for withholding the information with specific detail, demonstrates that the information withheld

logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit or declaration alone.  *ACLU v. DoD*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).

I.     THE CIA AND DOD PROPERLY WITHHELD THE INFORMATION AT ISSUE PURSUANT TO EXEMPTION (B)(3).

The withheld information is exempt from disclosure under FOIA exemption (b)(3). Under exemption (b)(3), matters "specifically exempted from disclosure" by certain statutes need not be disclosed.  5 U.S.C. § 552(b)(3).  In examining an exemption (b)(3) claim, a court determines whether the claimed statute is an exemption statute under FOIA and whether the withheld material satisfies the criteria of the exemption statute.  *CIA v. Sims*, 471 U.S. 159, 167 (1985). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978).  Thus, a court should "not closely scrutinize the contents of a withheld document; instead, [it should] determine only whether there is a relevant statute and whether the document falls within that statute." *Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993).  Moreover, to claim exemption (b)(3) the Government need not show that there would be any harm to national security from disclosure, only that the withheld information falls within the purview of the exemption statute.  *Larson*, 565 F.3d at 868.

DoD exempted the names from the two pages of the transcript under exemption (b)(3) pursuant to 10 U.S.C. § 130b, entitled "Personnel in overseas, sensitive, or routinely deployable

units: nondisclosure of personally identifying information." Herrington decl. at ¶¶ 6-7. This statute authorizes DoD to withhold from disclosure to the public "personally identifying information regarding … any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit." *Id*. at § 130b(a). "Personally identifying information" is defined to mean "the person's name, rank, duty address, and official title and information regarding the person's pay." *Id*. at § 130b(c)(1). 10 U.S.C. § 130b establishes particular criteria for withholding documents and qualifies as an exemption 3 statutes. *See, e.g., Hiken v. DoD*, 521 F. Supp. 2d 1047, 1062 (N.D. Cal. 2007).

As DoD's declaration establishes, the names of the DoD personnel mentioned on pages 3 and 16 of the transcript (pages 140 and 153 of DoD's May 18, 2012 release) are of persons assigned to routinely deployable units. Herrington decl. at ¶ 7. The information was therefore properly withheld under 10 U.S.C. § 130b and FOIA exemption (b)(3). *Id*.

For its withholdings, the CIA relied on section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 403g, which provides that the CIA shall be exempted from the provisions of any other law, including FOIA, which requires the publication or disclosure of, *inter alia*, the "names" of CIA personnel. Lutz decl. at ¶¶ 18-19. Courts have also found this statute to qualify as an exemption 3 statute. *See, e.g., Halperin v. CIA*, 629 F.2d 144 (D.C. Cir.1980); *Goland*, 607 F.2d 339. The statute's broad reference to "names" includes first names and pseudonyms, and the CIA thus properly withheld the names and pseudonyms under it. *See* Lutz decl. at ¶¶ 18-19.

7

II.   THE CIA PROPERLY PROTECTED THE FULL NAME AND
      PSEUDONYMS OF UNDERCOVER OFFICERS UNDER
      EXEMPTION (B)(1).

Exemption (b)(1) provides that FOIA's disclosure requirements do not apply to matters

that are "(A) specifically authorized under criteria established by an Executive order to be kept

secret in the interest of national defense or foreign policy and (B) are in fact properly classified

pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  "[L]ittle proof or explanation is

required beyond a plausible assertion that information is properly classified."  *Morley v. CIA*,

508 F.3d 1108, 1124 (D.C. Cir. 2007).  Because assessment of harm to national security is

entrusted to the Executive Branch rather than the courts, "the government's burden is a light

one;" "searching judicial review" is inappropriate; and "plausible" and "logical" arguments for

nondisclosure will be sustained.  *ACLU*, 628 F.3d at 614.

The withheld information was properly classified under Executive Order 13,526, 75 Fed.

Reg. 707 (Dec. 29, 2009).  A prerequisite for classification under Executive Order 13,526 is that

"the original classification authority determines that the unauthorized disclosure of the

information reasonably could be expected to result in damage to the national security, which

includes defense against transnational terrorism, and the original classification authority is able

to identify or describe the damage."  Exec. Order No. 13,526 § 1.1(a)(4).  National security is

defined as the national defense or foreign relations of the United States.  *Id*. § 6.1(cc).  Under the

Executive Order, information may only be classified if it falls within prescribed categories of

information, and if its unauthorized disclosure reasonably could be expected to cause identifiable

or describable damage to the national security.  *Id*. §§ 1.2, 1.4.  Information may be classified at

different levels, ranging from "Confidential" to "Top Secret," depending on the degree of harm

to national security that unauthorized disclosure could cause.  *Id*. § 1.2.

As the declaration of Martha M. Lutz, Information Review Officer, Director's Area, CIA, establishes, the full name of an undercover officer and the pseudonyms for two undercover officers were properly classified.  Lutz decl. at ¶¶ 20-26.  Ms. Lutz, an original classification authority, determined that this information is currently and properly classified; that the documents containing this information are properly marked; that the information relates to the CIA's core intelligence activities, sources, and methods; and that the unauthorized disclosure of this information reasonably could be expected to harm the national security of the United States. *Id*. at ¶ 23.  She explains that disclosure to the public of the true full name of an undercover CIA officer who was involved in the planning of the high-profile, highly sensitive raid on the Osama bin Laden compound could jeopardize the safety of the officer as well as the officer's family and persons who could be linked to the officer, including other CIA officers, human sources, and foreign liaison officers.  Because the disclosure of this officer's identity and affiliation with the Agency could endanger the officer, the officer's associates, and past and future CIA intelligence activities, sources, and methods, and hinder the CIA's ability to recruit, retain, and deploy its covert officers in the future, this information is properly protected under exemption (b)(1).  *Id*. at ¶¶ 24-25.

For similar reasons, the pseudonyms of two undercover officers who were involved in the Osama bin Laden raid were properly classified.  *Id*. at ¶ 26.  The CIA uses pseudonyms, which are essentially code names, to disguise the true identity of an officer in internal CIA communications.  The use of pseudonyms, which constitutes an intelligence method, adds an extra level of security for these officers, minimizing the damage that would flow from the

unauthorized disclosure or compromise of internal CIA communications.  Ms. Lutz determined

that the unauthorized disclosure of these particular pseudonyms reasonably could be expected to

damage the national security of the United States.  Although the harm from the isolated

disclosure of a pseudonym in a single document may be manageable, when juxtaposed with

other potentially compromised information about the officer, the disclosure could endanger the

officer's identity and the operational security of past and future operations involving the officer.

*Id*.

> III.  THE CIA AND DOD PROPERLY WITHHELD THE
>       INFORMATION AT ISSUE PURSUANT TO EXEMPTION
>       (B)(6).

Exemption (b)(6) allows the withholding of information about individuals in "personnel

and medical files and similar files" when the disclosure of such information would constitute a

"clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  For this exemption to

apply, the information at issue must be maintained in a government file and "appl[y] to a

particular individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  Once this

threshold requirement is met, Exemption 6 requires the agency to balance the individual's right

to privacy against the public's interest in disclosure.  *See Reed v. NLRB*, 927 F.2d 1249, 1251-52

(D.C. Cir. 1991).

Privacy is of particular importance in the FOIA context because a disclosure required by

FOIA is a disclosure to the public at large.  *See, e.g., Painting & Drywall Work Pres. Fund, Inc.
v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991).  In contrast, "the only relevant public interest in

the [Exemption 6] balancing analysis [is] the extent to which disclosure of the information

sought would shed light on an agency's performance of its statutory duties or otherwise let

10

citizens know what their government is up to." *DoD v. Fed. Labor Relation Auth.*, 510 U.S. 487, 497 (1994) (internal quotation marks omitted).

All of the names at issue in this case are of individual CIA or DoD personnel who played a role in the planning for the Osama bin Laden raid, and some are undercover.  By virtue of their involvement in this highly sensitive mission, these individuals have a strong privacy interest in their names and identities, which would be threatened if their names (even the first names of undercover officers) were revealed.  On the other side of the balance, there is no public interest in the public disclosure of these names.  In part due to the documents the CIA and DoD released in this case, the public already knows that individuals from the CIA and DoD met with these filmmakers.  Revealing the names of the individuals would provide no additional information of any value to the public—*i.e.*, it would shed no light on how the CIA and DoD perform their duties.  *See* Herrington decl. at ¶ 8; Lutz decl. at ¶ 27.

IV.    THE CIA AND DOD HAVE NOT WAIVED THEIR RIGHT TO
       WITHHOLD THE INFORMATION BY PROVIDING SOME OF
       IT TO THE FILMMAKERS.

To the extent plaintiff claims they are entitled to information properly withheld by the CIA or DoD because the CIA and DoD waived their exemptions by disclosing the information to the filmmakers, such an argument is easily dismissed.  As an initial matter, the scope of such an argument is limited here, for two reasons.  First, the transcript record indicates that only one of the names withheld by DoD was disclosed by DoD (as opposed to by Mark Boal), and the CIA instructed the officers whose names are at issue to share only their true first names when meeting with the filmmakers.

Second, the argument that the Government waived its right to rely on the claimed

11

exemptions by disclosing the names to the filmmakers is inapplicable to the Government's

exemption (b)(6) claim. The public disclosure waiver analysis is "not implicated when a

government agency relies on exemption 6 to prevent disclosure of personal information."

*Sherman v. Dep't of the Army*, 244 F.3d 357, 363 (5th Cir. 2001). The reason for this is that the

privacy interests at stake in exemption (b)(6) belong to the individual, not the agency

withholding the information, or the Government more generally, and the Government simply

cannot waive those interests for the individual, even when it employs him. *Id.* (citing *DOJ v.*

*Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989)). *See also Prison*

*Legal News v. Exec. Office for U.S. Attorneys*, 628 F.3d 1243, 1249 (10th Cir.), *cert. denied*, 132

S. Ct. 473 (2011) (government cannot waive individual privacy interests under exemption 7(C));

*Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1124 (7th Cir. 2003) (FTC cannot waive

individual consumers' privacy interests under exemption (b)(6) by giving a limited group of law

enforcement officials access to nonpublic files); *Judicial Watch v. Reno*, Civ. A. 00-0723(JR),

2001 WL 1902811, at * 7 (D.D.C. Mar. 30, 2001) (government cannot waive individual's

privacy interests under exemption (b)(6) by raiding his home).

Nor can plaintiff demonstrate that the information at issue is in the public domain and

that it cannot therefore be withheld. When information has been "officially acknowledged" and

placed into the public domain, its disclosure may be compelled over an agency's otherwise valid

exemption claim. However, "[t]he public domain doctrine sets a high standard that a plaintiff

must meet in order to establish that the government has waived an otherwise-valid FOIA

exemption." *Amer. Immigration Lawyers Ass'n v. Dep't of Homeland Security*, – F. Supp. 2d –,

2012 WL 1066499, at * 5 (D.D.C. Mar. 30, 2012). Under the public domain doctrine, materials

normally protected from disclosure under a FOIA exemption lose their "protective cloak" only if they have been "disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). *See also ACLU*, 628 F.2d at 620-21 (the information requested "must already have been made public through an official and documented disclosure."). And it is the plaintiff's burden to point to specific information, in the public domain, that duplicates the material being withheld; it is not the Government's burden to prove a negative—that the requested information had not been previously publicly disclosed.. *Cottone*, 193 F.3d at 554; *Niagara Mohawk Power Corp. v. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999); *Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993).

The rationale of the doctrine, which is "critical to understanding when [it] applies," *Prison Legal News*, 628 F.3d at 1252, is that "where information 'is truly public, then enforcement of an exemption cannot fulfill its purpose.'" *Cottone*, 193 F.3d at 554 (quoting *Niagara Mohawk*, 169 F.3d at 19). The D.C. Circuit has noted that "'while the logic of FOIA postulates that an exemption can serve no purpose once information . . . becomes public, we must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver'" of the Government's right to invoke an exemption. *Students Against Genocide v. Dep't. of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) (quoting *Cottone*, 193 F.3d at 555).

The CIA and DoD did not "disclose[] and preserve[] in a permanent public record" the names of its officers by providing them to the private filmmakers. The CIA and DoD disclosed the names to the filmmakers, not the general public, and only for the limited purpose of facilitating the filmmakers' meeting with the individuals. *See* Lutz decl. at ¶ 12; DoD transcript

13

(Ex. C to Herrington decl.).  The CIA and DoD did not authorize the filmmakers to make the names they shared with them public, to publicly associate the individuals with the CIA or DoD, or to expose those individuals' identity in any publicly released film, and there was no reason for the CIA or DoD to have believed that any of this would have happened.  *Id*.  In fact, Mr. Vickers specifically told Mark Boal, in providing him with the name of someone he could talk to, that "the only thing we ask is that you *not reveal* his name in any way as a consultant . . . ." Transcript at 3 (page 140 of DoD's May 18, 2012 release) (emphasis added).[2]

This limited disclosure of the names to the filmmakers does not make the information "truly public" under the public domain doctrine.  *Students Against Genocide*, 257 F.3d at 836.  In *Students Against Genocide*, the D.C. Circuit held that the Government did not officially disclose classified photographs when the U.S. Ambassador to the United Nations showed them to the U.N. Security Council.  The photographs had not been released to the public, the court reasoned, because they were shown only to the members of the Security Council, not the general public, and because the Ambassador retained custody of them.  *Id*.

Similarly, in *Muslim Advocates v. DOJ*, 833 F. Supp. 2d 92 (D.D.C. 2011), the court held that despite the facts that the FBI allowed civil rights groups to view certain chapters of a FBI operations guide during a two-hour meeting at FBI headquarters, and allowed them to take notes on the chapters and to keep those notes, the review was nonetheless limited and did not waive the FBI's right to withhold the chapters.  The court concluded that the chapters "were not released to the general public; rather, they were only shown to a select group of

---

[2]  As noted above, the name of the person provided by Mr. Vickers is the only name on DoD pages 140 and 153 that the public domain doctrine could even apply to, because, according to the transcript itself, the other names were disclosed by Mark Boal, not DoD.

organizations—personally invited by the FBI—at FBI headquarters."  833 F. Supp. 2d at 100.  In addition, the chapters had not left the building, so there was no permanent public record of them. *Id.  See also Prison Legal News*, 628 F.3d at 1249-50 (Government's displaying images of murdered prisoner during criminal trial of his murderers, only to those present in the courtroom, did not constitute a public release); *Amer. Immigration Lawyers Ass'n*, 2012 WL 1066499, at * 7 (attachment of document to filing in FOIA case did not constitute official public disclosure, where document was attached not out of any desire to disclose the document but in support of an argument that Government had responded appropriately to the FOIA requests it received).

Because of the limited nature of the CIA and DoD's sharing of the individuals' names with the filmmakers, enforcement of exemptions (b)(3) and (b)(6) here can fulfill their purposes. *Cottone*, 193 F.3d at 554.  "The public domain doctrine is limited and applies only when the applicable exemption can no longer serve its purpose.  Given that the public domain doctrine appears nowhere in the statutory text of FOIA, only the failure of an express exemption to provide any protection of the interests involved could justify its application."  *Prison Legal News*, 628 F.3d at 1253.  The filmmakers were not authorized to release the names publicly, and the names have not, to our knowledge, been released to the public.  Thus, the Government's interests protected by exemptions (b)(1) and (b)(3) and the individual officers' privacy interests protected by exemption (b)(6) remain intact.  *Id*. at 1252-53.

## **CONCLUSION**

For all of the foregoing reasons, defendants respectfully request that the Court enter summary judgment in their favor on all of plaintiff's claims.

Respectfully Submitted,

STUART F. DELERY
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Director, Federal Programs Branch


 /s/ Marcia Berman
MARCIA BERMAN
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7132
Washington, D.C.  20530
Tel.: (202) 514-2205
Fax: (202) 616-8470
Email: marcia.berman@usdoj.gov

Attorneys for Defendants.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>U.S. DEPARTMENT OF DEFENSE, and )<br>CENTRAL INTELLIGENCE AGENCY, )<br><br>Defendants. ) | Civil Action No.<br>1:12-cv-00049-RC |

## **DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Civil Rule 7(h) of the Rules of the United States District Court for the District of Columbia, defendants hereby submit the following statement of material facts as to which defendants contend there is no genuine issue in connection with their motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

1.      On August 9, 2011, Judicial Watch sent FOIA requests to defendants United States Department of Defense ("DoD") and Central Intelligence Agency ("CIA"), seeking records of  communications between the agencies and certain filmmakers concerning a planned film about the killing of Osama bin Laden.  Judicial Watch specifically requested all records of communications between DoD or the CIA and Kathryn Bigelow, Mark Boal, Megan Ellison, or any other officer or employee of Annapurna Pictures; and all records concerning an upcoming film regarding the killing of bin Laden.  The time frame for the request was January 1, 2011, through August 9, 2011.  Declaration of Martha M. Lutz, Information Review Officer, Director's Area, Central Intelligence Agency ("Lutz decl."), at ¶ 7 & Ex. A, attached hereto as Ex. 1; Declaration of Mark Herrington ("Herrington decl."), at ¶ 3 & Ex. A, attached hereto as Ex. 2.

2.     DoD and the CIA both acknowledged receiving Judicial Watch's request but explained that they would not be able to respond to the request within the 20-day statutory time period.  Herrington decl. at ¶ 4 & Ex. B; Lutz decl. at ¶ 8 & Ex. B.

3.     Pursuant to the parties' agreement, DoD and the CIA produced responsive, non-exempt documents to plaintiff on May 18, 2012.  DoD produced 153 pages of responsive records, including a 16-page transcript of a background interview with Mark Boal and Kathryn Bigelow, with minimal redactions.  Herrington decl. at ¶ 4.  The CIA produced 67 responsive documents, also minimally redacted, and withheld in full 27 responsive documents on the basis of FOIA exemptions (b)(5), primarily on the grounds of the attorney-client privilege.  Lutz decl. at ¶ 9.

4.     On August 24, 2012, DoD and the CIA produced additional responsive, non-exempt records to plaintiff, also with minimal redactions.  *See* July 25, 2012 Order (ECF No. 15); Herrington decl. at ¶ 4; Lutz decl. at ¶ 9.

5.     As a result of negotiations between the parties, defendants understand Judicial Watch to be pursuing the following challenges to defendants' withholdings.  Judicial Watch challenges DoD's redactions on two pages of the transcript, withheld under exemptions (b)(3) and (b)(6).  *See* transcript at 3, 16 (pages 140 and 153 of DoD's May 18, 2012 release), attached as Ex.C to Herrington decl.  DoD explains in its declaration that the redactions on page 3 of the transcript (page 140 of DoD's release) are, in order, (1) a first and last name of a DoD individual suggested by Mark Boal as someone he wanted to talk to; (2) a rank and last name of a different DoD individual identified by Mark Boal; (3) a last name - full name, such as "Smith, John Smith," of a third DoD individual suggested by the Under Secretary of Defense for Intelligence,

2

Mike Vickers, as someone Mark Boal could talk to; and (4) the last name of this third individual. The redaction on page 16 of the transcript (page 153 of DoD's release) is the rank and last name of the third individual redacted from page 3 (page 140 of DoD's release) – *i.e.*, the person Mr. Vickers identified for Mark Boal to talk to.  Herrington decl. at ¶ 7.

6.      Thus, the transcript indicates that only one of the names at issue was provided by DoD.

7.      The transcript further says that the individual identified by Mr. Vickers was involved in the mission that resulted in the death of Osama bin Laden "from the beginning as a planner; a SEAL Team 6 Operator and Commander."  Transcript at 3 (page 140 of DoD's release) (Herrington decl. Ex. C).

8.      Judicial Watch also challenges the CIA's withholding of names or identifying information of certain of its officers or employees who played a role in the planning of the operation that resulted in the death of Osama bin Laden, withheld under exemptions (b)(1), (b)(3), and (b)(6).  Lutz decl. at ¶ 12.  More specifically, the CIA withheld from internal email chains (1) the first and last name of an undercover CIA officer who met with the filmmakers, *see* document no. C05807298 (CIA May 18, 2012 release, at pages 53-54), Lutz decl. at ¶ 14; (2) the true first names of four undercover CIA officers who met with the filmmakers, one of whom is the same officer whose full true name was withheld in document no. CO5807298, *see* document no. C05876857 (CIA Aug. 24, 2012 release, Part 3, at page 24), Lutz decl. at ¶ 15; and (3) the pseudonyms of two officers who met with the filmmakers, *see* document no. C05882735 (CIA Aug. 24, 2012 release, Part 1, at page 31), Lutz decl. at ¶ 16.

9.      CIA officers who met with the filmmakers who were undercover or otherwise in

3

sensitive positions were instructed to provide only their true first names to the filmmakers (so not their last names or pseudonyms).  Lutz decl. at ¶¶ 12, 14-16.

10.     The names of the DoD personnel mentioned on pages 3 and 16 of the transcript (pages 140 and 153 of DoD's May 18, 2012 release) are of persons assigned to routinely deployable units.  Herrington decl. at ¶ 7.

11.     The full name of a CIA undercover officer and the pseudonyms for two CIA undercover officers were properly classified.  Lutz decl. at ¶¶ 20-26.  Ms. Lutz, an original classification authority, determined that this information is currently and properly classified; that the documents containing this information are properly marked; that the information relates to the CIA's core intelligence activities, sources, and methods; and that the unauthorized disclosure of this information reasonably could be expected to harm the national security of the United States.  *Id*. at ¶ 23.

12.     Disclosure to the public of the true full name of an undercover CIA officer who was involved in the planning of the high-profile, highly sensitive raid on the Osama bin Laden compound could jeopardize the safety of the officer as well as the officer's family and persons who could be linked to the officer, including other CIA officers, human sources, and foreign liaison officers.  The disclosure of this officer's identity and affiliation with the Agency could endanger the officer, the officer's associates, and past and future CIA intelligence activities, sources, and methods, and hinder the CIA's ability to recruit, retain, and deploy its covert officers in the future.  *Id*. at ¶¶ 24-25.

13.     For similar reasons, the pseudonyms of two undercover officers who were involved in the Osama bin Laden raid were properly classified.  *Id*. at ¶ 26.  The CIA uses

pseudonyms, which are essentially code names, to disguise the true identity of an officer in internal CIA communications.  The use of pseudonyms, which constitutes an intelligence method, adds an extra level of security for these officers, minimizing the damage that would flow from the unauthorized disclosure or compromise of internal CIA communications.

14.     The unauthorized disclosure of these particular pseudonyms reasonably could be expected to damage the national security of the United States.  Although the harm from the isolated disclosure of a pseudonym in a single document may be manageable, when juxtaposed with other potentially compromised information about the officer, the disclosure could endanger the officer's identity and the operational security of past and future operations involving the officer.  *Id*.

15.     All of the names at issue in this case are of individual CIA or DoD personnel who played a role in the planning for the Osama bin Laden raid, and some are undercover.  By virtue of their involvement in this highly sensitive mission, these individuals have a strong privacy interest in their names and identities, which would be threatened if their names (even the first names of undercover officers) were revealed.   *See* Herrington decl. at ¶ 8; Lutz decl. at ¶ 27.

16.     There is no public interest in the public disclosure of these names.  In part due to the documents the CIA and DoD released in this case, the public already knows that individuals from the CIA and DoD met with these filmmakers.  Revealing the names of the individuals would provide no additional information of any value to the public—*i.e.*, it would shed no light on how the CIA and DoD perform their duties.  *Id.*

17.     The CIA and DoD disclosed the names at issue to the filmmakers, not the general public, and only for the limited purpose of facilitating the filmmakers' meeting with the

5

individuals.  *See* Lutz decl. at ¶ 12; DoD transcript (Ex. C to Herrington decl.).

18.     The CIA and DoD did not authorize the filmmakers to make the names they shared with them public, to publicly associate the individuals with the CIA or DoD, or to expose those individuals' identity in any publicly released film, and there was no reason for the CIA or DoD to have believed that any of this would have happened.  *Id.*

19.     Mr. Vickers specifically told Mark Boal, in providing him with the name of someone he could talk to, that "the only thing we ask is that you *not reveal* his name in any way as a consultant . . . ."  Transcript at 3 (page 140 of DoD's May 18, 2012 release) (emphasis added).

Respectfully Submitted,

STUART F. DELERY
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Director, Federal Programs Branch


 /s/ Marcia Berman
MARCIA BERMAN
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7132
Washington, D.C.  20530
Tel.: (202) 514-2205
Fax: (202) 616-8470
Email: marcia.berman@usdoj.gov

Attorneys for Defendants.